388 F.2d 746
 W. L. HAILEY & COMPANY, Plaintiff-Appellant,
v.
COUNTY OF NIAGARA and Niagara County Water District,
Defendants-Appellees, and L. A. Wells Construction Company,
Intervenor-Appellee. COUNTY OF NIAGARA and Niagara County
Water District, Plaintiffs-Appellants, v. W. L. HAILEY&
COMPANY, a Tennessee Corporation, Defendant-Appellee.
 Nos. 114, 27, Dockets 31234, 31235.
 United States Court of Appeals Second Circuit.
 Argued Nov. 20, 1967.
Decided Dec. 27, 1967.
 
 W. Raymond Denney, Nashville, Tenn., and Paul Z. Lewis, New York City (Denney, Lackey, Chernau & Castleman, Nashville, Tenn., and Jarvis & Pilz, Paul Z. Lewis, New York City, on the brief), for W. L. Hailey & Company.
 Anthony L. Pusateri, Lockport, N.Y. (Fogle, Andrews & Pusateri, Lockport, N.Y., on the brief), for County of Niagara and Niagara County Water District.
 James O. Moore, Jr., Buffalo, N.Y. (Raichle, Moore, Banning & Weiss, Buffalo, N.Y., on the brief), for L. A. Wells Construction Co.
 Before LUMBARD, Chief Judge and KAUFMAN and FEINBERG, Circuit Judges.
 LUMBARD, Chief Judge:
 
 
 1
 This is a consolidated appeal from judgments of the District Court for the Western District of New York in two diversity suits which were tried jointly, without a jury, before Judge Henderson. The actions arose out of a project initiated by the County of Niagara and the Niagara County Water District to draw water from the Niagara River. W. L. Hailey & Company, a Tennessee corporation, was the prime contractor on the project. L. A. Wells Construction Co., a Delaware Corporation with its principal place of business in Ohio, was one of its subcontractors and has intervened in Hailey's suit against Niagara. There is diversity of citizenship between all of the parties.
 
 
 2
 In Hailey v. Niagara, Hailey's first cause of action is for damages caused by Niagara's alleged misrepresentation or warranty that the subaqueous construction work specified in the bidding and the contract did not require any rock excavation. Judge Henderson found that there was no misrepresentation or warranty and that an experienced contractor would have expected to find rock that would require excavation. We affirm the dismissal of this cause of action. Hailey's second cause of action is for costs it sustained in repairing intake pipes in the west branch of the Niagara River. It alleges that the repairs were required because of improper design and planning by Niagara. Judge Henderson found that the repairs were required because Hailey chose to construct a dike over the pipes in the course of its work and the dike broke. We affirm the dismissal of this cause of action.
 
 
 3
 At Hailey's invitation Wells intervened to seek recovery against Hailey upon a cost-plus subcontracting agreement. The intervenor asserted three additional claims in its pleadings.[1] Only the judgments in Wells' first and second cross-claims have been appealed. Wells' first cross-claim is to recover upon an oral contract with Hailey to re-lay damaged pipe in the east branch of the Niagara River between Stations 170k08 and 171k84 for cost plus a reasonable profit. Judge Henderson found that Wells' costs plus a reasonable profit of 15% Were $101,370.23. We find that the trial court erred in computing Wells' costs and remand for determination of the actual costs to Wells of operating its construction equipment. In all other respects the judgment in favor of Wells on its first cross-claim is affirmed.
 
 
 4
 Wells' second cross-claim is for delay and unproductive work due to Hailey's alleged misrepresentation that the trench for the pipeline had been excavated to grade from Station 170k18 to Station 164k40. The trial court found that Hailey had made a misrepresentation and, as a direct consequence, Wells' equipment was engaged in unproductive work and Wells was damaged in the sum of $28,599.51. We modify the judgment in Wells' second cross-claim, reducing the award of damages to $26,934.51.
 
 
 5
 Hailey contends that it is entitled to indemnity from Niagara upon Wells' first cross-claim because the pipe was damaged due to Niagara's improper plans and specifications or failure to modify the plans to meet conditions. Judge Henderson found that the pipe was not damaged because of any error in design or supervision and that the damage was caused by improper methods of construction by Hailey which resulted in spud damage. We affirm the portion of the judgment in Wells' first cross-claim which denied Hailey indemnity against Niagara.
 
 
 6
 In Niagara v. Hailey, Niagara brought suit in the state court to recover additional payments to Hailey for subaqueous rock excavation, alleging that these payments were made by mistake since the work was required to be performed under the contract. Hailey removed the case to the district court where it was tried jointly with Hailey v. Niagara. The trial court found that the payments were made under the provisions of the contract relating to change orders and denied recovery. We reverse the judgment dismissing the complaint and remand for determination of the amount, if any, of Niagara's recovery of payments for work which Hailey was required to perform under the contract.
 
 
 7
 On May 1, 1959 Hailey agreed to construct the Niagara County District's Water Project for a lump sum payment of $1,236,836 according to elaborate specifications set forth in the contract. The plans called for subaqueous work in the west branch of the Niagara River consisting of installation of twin 60 inch covered raw water lines extending approximately 540 feet into the river from a pumphouse to be constructed on Grand Island. From the pumphouse a pipe line was to be built to carry the water across Grand Island to a 42 inch subaqueous covered raw water line which was to extend 3,000 feet under the east branch of the Niagara River to a water treatment plant in Wheatfield. Hailey had no difficulty fulfilling the part of the contract requiring construction work on land, but it ran into considerable difficulty in the subaqueous portions of the work.
 
 HAILEY'S SECOND CAUSE OF ACTION
 
 8
 In the west channel of the river, where Hailey was to lay twin intake pipes, some pipe which was laid in 1959 had to be relaid in 1960 because it was found to have broken. Hailey contends that the pipe broke because, due to improper design and planning by Niagara, the supports upon which the pipe rested were insufficient to distribute the weight of the backfill. We consider this claim first since it is unrelated to the chronology of events in the east channel which must be considered in connection with all of the other claims on appeal.
 
 
 9
 The trial court found that the damage which made it necessary to relay the pipe was caused by the collapse of a dike which Hailey had built over the pipe in order to construct out of water the section of pipeline nearest to the shore. The court found that the sliding and sloughing of the dike towards the shore created a mud slide which pulled the pipes apart through skin friction, and displaced them upwards and shorewards.
 
 
 10
 Engineer Seeley testified that the metal bars in the concrete pipe had been 'necked down,' that is, that they had been pulled from both ends so that they stretched out in length, shrunk in girth and broke, like a piece of taffy pulled from both ends. This uncontradicted testimony supports the court's finding and is inconsistent with Hailey's theory that Niagara's inadequate plans for the pipe bed caused the break under the lateral stress of the weight of the backfill on top of the pipe. In view of Seeley's testimony, we reject Hailey's contention that the only evidence supporting Niagara's theory of the pipe break is that another section of pipe laid according to the same design did not break under the weight of backfill.
 
 
 11
 The trial court's adoption of Niagara's theory of the pipe break is not clearly erroneous. Judge Henderson found, and Hailey does not dispute, that construction of the dike was not a requirement of the contract, but a mode of construction chosen by the contractor. Hailey certainly cannot recover the expense of making repairs to work which was damaged because of the failure of a method of construction chosen by it and under its control. We affirm so much of the judgment in Hailey v. Niagara as dismissed Hailey's second claim.
 
 HAILEY'S FIRST CAUSE OF ACTION
 
 12
 Hailey's first claim in Hailey v. Niagara is to recover damages for unproductive work due to alleged warranties or misrepresentations by Niagara and its engineers that the material to be excavated by Hailey was sand, silt, clay and gravel and not solid rock.
 
 
 13
 Hailey contends that it contracted with Niagara in reliance upon drawing P-9, which was part of the contract, specifications and bidding material, in the belief that the drawing represented that there was no solid rock along the line of construction. In August 1959, after Hailey had dug the trench for pipes about one-third of the way across the east channel, it hit 'hard digging.' In spite of attempts to improve the effectiveness of its equipment, Hailey was unable to make much progress. After many unproductive weeks of trying to reach grade and exploratory digging up and down the line of construction, Hailey removed all of its equipment from the east channel. It did no further work on the subaqueous pipeline in the east channel and in 1960 Hailey subcontracted the work to intervenor L. A. Wells Construction Company. After Wells began to work the parties discovered that the level of bedrock along the line of construction was actually several feet above the grade line of the pipe and that two-thirds of the job of digging the trench on the east branch of the river required special rock excavation equipment.
 
 
 14
 There are three diagrams in drawing P-9, which Hailey contends misrepresented the level of bedrock along the line of construction. At the top is a cross-sectional representation of the drill cores from test borings made at 200 feet intervals across the river bottom. In the center is a plan of the pipe route, also showing the location of the boring holes in relation to the pipeline. At the bottom is a profile of the pipe line showing the position of the pipe with respect to the waterline, and beneath the pipe is a line which is designated 'approximate top of rock.' Hailey claims that this line constitutes either an express warranty or a representation by Niagara that the actual top of the rock was below the pipeline and that no subaqueous rock work was required to complete the job. The trial court found that drawing P-9 clearly and correctly showed the elevations of rock obtained from the borings and that the borings were taken 200 feet apart at distances varying from 60 feet to 200 feet and more from the actual line of construction of the pipeline. The data from the borings was transposed to the profile in drawing P-9 in accordance with standard engineering practice and labeled 'approximate top of rock.' The court found that the drawing contained no representation or information as to the rock elevations along the actual line of construction and contained all of the information with reference to the borings and composition of the river bed known to the appellees. It held that Hailey was negligent in interpreting P-9 and failing to consult an engineer to interpret the drawing, and that an experienced contractor or engineer would have been alerted by the information in the drawing to the possible presence of rock above grade along the actual line of construction.
 
 
 15
 We cannot say that the trial court's findings were erroneous. The testimony of four engineers is ample evidence to sustain them. Only Hailey's president, a layman, testified that the drawing represented that there was no rock above the pipe line. Accordingly, we affirm Judge Henderson's dismissal of the first cause of action.
 
 WELLS' CROSS-CLAIMS
 
 16
 We next consider the cross-claims against Hailey of intervenor L. A. Wells Construction Company. The trial court entered judgment for Wells for $76,370.23 on Wells' first cross-claim and for $28,599.51 on Wells' second cross-claim. Hailey appeals from the trial court's determination of damages on both cross-claims, from the trial court's denial of indemnity against Niagara on the first cross-claim and from its determination that Hailey is liable on the second cross-claim.
 
 
 17
 After hitting hard digging, Hailey sought to fulfill its contract obligations by procuring a dipper dredge, a specialized piece of equipment suited to excavation of hard river bed. In the spring of 1960 Hailey learned that intervenor Wells owned this type of equipment. Hailey's president, Steele, met with Louis A. Wells, the president of Wells, at the job site. Steele told Wells that Hailey had excavated the ditch to grade as far had encountered hard digging, there was had encountered hard digging, there was no rock work involved. Wells subcontracted with Hailey for the sum of $93,000 to lay pipe from Station 170k08 south and to excavate the ditch from Station 164k40 south pursuant to the terms of the contract.
 
 
 18
 When Wells began to work, it discovered that the trench had not been excavated to grade from Station 170k08 to Station 164k40 as Hailey had represented and that, in order to reach grade, it would have to undertake extensive rock excavation work with the dipper dredge. Wells' pipelaying work was delayed fourteen days until the dipper dredge could dig the trench to grade in the section which Steele had represented as already dug to grade. The costs incurred during the delay which resulted from Hailey's misrepresentation are the basis of Wells' second cross-claim.
 
 
 19
 When Wells began to lay pipe, it discovered that the pipe laid by Hailey the previous year was damaged and had not been laid in accordance with Niagara's specifications. Niagara's engineers directed Hailey to take up this pipe and lay new pipe to specifications. Since Hailey had removed its equipment from the job and was counting upon Wells to finish the subaqueous work, Hailey asked Wells to undertake this work as an additional subcontract. Hailey agreed to pay Wells' cost plus a reasonable profit for taking up and laying the pipe.
 
 
 20
 While Hailey concedes liability on the cost-plus contract, it disputes the amount due to Wells for its efforts. When negotiations failed to resolve this dispute, Hailey suggested that Wells intervene in Hailey's suit against Niagara. The amount due on the cost-plus contract is the basis of Wells' recovery on the first cross-claim.
 
 
 21
 Hailey contends that the trial court erred with respect to Wells' first cross-claim in denying Hailey indemnity against Niagara. Hailey claims that the pipe broke and was displaced because of the failure of Niagara's engineer to adhere to specifications or to alter them appropriately when it became evident that the pipe was being laid directly on slippery bedrock rather than on a layer of overburden. The trial court found that the pipes were disjointed in a way similar to that in a 1959 incident when Hailey broke the pipeline by placing the spuds used by the barges in backfilling directly on the pipe. The trial court found that the disjointing was not caused by error in design or supervision by the engineers. These findings are not clearly erroneous. Hailey relies upon the testimony of its supervisor on the job, Mr. Boatman, that since the pipe was laid on blocks it might slip because of the slippery rock. However, on cross-examination Boatman admitted that it was the job of Hailey's diver to push gravel bedding under the pipe between the blocks and that if the pipe rested on the gravel properly the pipe would not slide. Since Hailey's theory does not explain how following the plans and specifications or failing to modify them resulted in the pipes becoming disjointed, the judgment denying indemnity is affirmed.
 
 
 22
 Hailey contends that even if it is liable, the trial court's finding of damages in favor of Wells in both cross-claims cannot be sustained because Wells failed to itemize its claim for damages.[2] We disagree. Wells proved its damages through the testimony of its president, Mr. Wells. His uncontradicted testimony established how much working time was devoted to removing and relaying pipe under the first cross-claim and in unproductive efforts to lay pipe and reach grade under the second cross-claim. His testimony as to which equipment was used on each job and how many hours of labor were attributed to each crossclaim is also uncontradicted. On the basis of the corporation's general ledger, Wells' past practice and Wells' experience as a subaqueous construction contractor, he testified that certain values could be assigned to the working time of each piece of equipment and that portions of Well's overhead, miscellaneous expenses and compensation insurance expense could be allocated to the different claims. He also testified that 15% Profit on the job was reasonable, especially since his costs did not include the purchase of any substantial amounts of construction materials.
 
 
 23
 Hailey does not dispute the accuracy of Well's books and records on this appeal. Hailey does not bring to our attention any evidence which contradicts Mr. Wells' testimony concerning the costs incurred by Wells under its cross-claims. Appellant bases its attack solely upon the method used by Wells to prove its damage claims and the items that were included in the claims.
 
 
 24
 Hailey's main contention is that Well's proof must fail because Wells did not submit an itemized statement to support each claim of damages. We are not persuaded by Hailey's claims that Wells did not segregate charges related to various jobs in its books and accounts and that an accountant retained by Hailey to examine Wells' books could not determine from the books how Wells' costs should be allocated. It is well settled that once a plaintiff has proved that it is more probable than not that he has been damaged, plaintiff need only show the amount of his damages with reasonable certainty. 'The rule to be applied is a flexible one, for as this court said long ago in Wakeman v. Wheeler & Wilson Mfg. Co., 101 N.Y. 205, 209, 4 N.E. 264, 266: 'When it is certain that damages have been caused by a breach of contract, and the only uncertainty is to their amount, there can rarely be good reason for refusing on account of such uncertainty any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damage which he has caused is uncertain." Randall-Smith, Inc. v. 43rd St. Estates Corp., 17 N.Y.2d 99, 105-106, 268 N.Y.S.2d 306, 312, 215 N.E.2d 494, 498 (1966). Duane Jones Company, Inc. v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954); Steitz v. Gifford, 280 N.Y. 15, 19 N.E.2d 661, 122 A.L.R. 292 (1939); Dunkel v. McDonald, 272 App.Div. 267, 70 N.Y.S.2d 653 (1947), aff'd, 298 N.Y. 586, 81 N.E.2d 323 (1948). Accord, Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264- 266, 66 S.Ct. 574, 90 L.Ed. 652 (1946); De Long Corporation v. Lucas, 278 F.2d 804, 810 (2 Cir.), cert. denied, 364 U.S. 833, 81 S.Ct. 71, 5 L.Ed.2d 58 (1960).
 
 
 25
 While it is true that Wells' books did not segregate expenses due to the different aspects of the work performed, Mr. Wells testified as to how much of his expenses were attributable to each claim. In light of the corporation's method of bookkeeping, we find that Mr. Wells' testimony was a reasonable method of proving damages and perhaps the best method available under the circumstances. See Achilles v. New England Tree Expert Co., 369 F.2d 72 (2 Cir. 1966). We see no basis for disturbing the trial court's findings on the issue of damages because of appellee's method of proof. Accord, Merritt, Chapman & Scott Corporation v. Guy F. Atkinson Company, 295 F.2d 14 (9 Cir. 1961); Walla Walla Port District v. Palmberg, 280 F.2d 237 (9 Cir. 1960). See 78 A.L.R. 858; 22 Am.Jur.2d, Damages 25; 25A C.J.S. Damages 162(11); 13 N.Y.Jur., Damages 16-13.
 
 
 26
 Hailey's claim that Mr. Wells' testimony should have been excluded as hearsay since he relied upon the corporate books and records which were not in evidence is frivolous, as is the claim that Wells is required to comply with the shopbook statute, 28 U.S.C. 1732. Wells' books and records were available throughout the trial and could have been used by Hailey to impeach Mr. Wells' testimony.
 
 
 27
 Hailey contends that the trial court erred in including the reasonable rental value of Well's equipment as an element of costs in computing damages under the two cross-claims. We agree that it was not proper to consider rental value of equipment as part of Wells' costs in computing the amount due under the cost plus contract, but find no error in the inclusion of reasonable rental value in computing damages from delay due to misrepresentations in the second cross-claim.
 
 
 28
 On the first cross-claim Hailey is liable for cost plus reasonable profits. Wells claims $30,900 plus 15% Profit on 'rental' of the derrick scow, dipper dredge and a tug. Mr. Wells testified as to the 'reasonable rental value' of the equipment then multiplied it by the number of hours spent at work, including the total as part of the claim. Obviously the actual cost to Wells of operating this equipment is something less than the rental value Wells would have charged to someone else for use of the equipment.[3] It was error to allow Wells to recover the hypothetical cost to someone else of renting Wells' equipment for the purpose of performing this work since Wells already owned this equipment and did not actually incur a rental expense. Under the terms of the oral agreement with Hailey, Wells is only entitled to recover actual expenses plus 15% Profit. Further, we must assume that reasonable rental value includes a reasonable profit, so that the trial court's addition of 15% Profit to the rental value was piling profit on profit. For these reasons the trial court's computation of cost plus reasonable profits in the first cross-claim is clearly erroneous and the judgment must be reduced by $35,535 less the actual cost incurred by Wells by operating the equipment, plus 15% Profit. We remand the intervenor's first cross-claim for redetermination of damages.
 
 
 29
 On Wells' second cross-claim, which is for unproductive work and delay caused by Hailey's misrepresentation that the trench was dug to grade, we find that Wells could properly include reasonable rental value of the equipment listed in its claim under applicable principles of New York law. Immick Co. v. State, 251 App.Div. 919, 297 N.Y.S. 623 (1937). However, it was error to allow recovery of 15% Profit on the fair rental value of the equipment. As we stated with regard to the first cross-claim, an allowance of profits upon fair rental value would be piling profit on profit. Therefore the judgment in the second cross-claim must be reduced by $1,165, that portion of the profit awarded by the trial court which was calculated upon the fair rental value of the equipment. The judgment in favor of Wells is reduced to 26,934.51.
 
 
 30
 With respect to Wells' first cross-claim, Hailey contends that Wells' bills for the cost plus work of removing and relaying pipe are inconsistent, and that with each succeeding bill Wells demanded a larger sum for performing the same work. This contention simply is not in accord with the record.
 
 
 31
 On January 16, 1961 Wells sent to Hailey a bill for 'work completed as of December 15, 1960.' Hailey contends that the part of this bill related to the cost plus contract is Item #7, 'pipe removal,' for $48,600. Hailey failed to note that items #1, 2 and 3 of the same bill for concrete pipe, steel pipe and trench excavation work also relate to construction north of Station 170k08 and therefore part of these items represent billings for cost plus work, while the balance of these items, from Station 170k08 south represent billings for progress payments on the original subcontract agreement.
 
 
 32
 Since the bill quotes prices per foot per item, and approximately 200 feet of work in each of the items is attributable to the first cross-claim, it is easy to calculate that approximately $3200 on item #1, $1400 on item #2 and $2700 on item #3 are chargeable against the cost plus agreement, in addition to the $48,600 in item #7. This makes a total of approximately $55,900.
 
 
 33
 Hailey claims that the June 12, 1961 bill is an upward revision of the charges in the January 16 bill. However the bill itself makes clear that this was a supplementary billing for the extra work due to unanticipated digging of rock in order to bring the trench to grade, both in the section of the trench covered by the original subcontract and in the section covered by the cost-plus agreement. One item is 'Relaying 170' of pipe at $46.20 * * * $7,854.00.' Adding this additional charge to the portion of the January 16 bill attributable to the first cross-claim gives a total billed cost of about $63,800, not including overtime for rock digging.
 
 
 34
 Neither party made an effort to show whether payment of Wells' January 16 and June 12 bills would have netted Wells a profit. There is evidence that Wells made only $1,870.21 on sales of $2,470,921 in 1960 and Mr. Wells testified that the two bills were for progress payments, that they were based upon costs and did not include profits. As progress payment billings, they could not be expected to be precise reflections of actual costs. Mr. Wells testified that the intervenor did not compute actual costs until after intervening. Mr. Steele conceded that Hailey did not figure its actual costs before litigation either. Computation of damages must depend upon actual expenses and losses while it is common knowledge that billings are only an approximation of actual expenses. H. A. Finney and H. E. Miller, Principles of Accounting, Intermediate (5th ed. 1958), 173; W. H. Shannon, Legal Accounting (1951) 139-142. We see no inconsistency between Wells' billings and its claims for damages at trial on the first cross-claim, after making allowance for reversal of the award of $35,535 for equipment rental and profits. The trial court could properly find that billed costs were below Wells' actual costs of doing the work and that they would have netted Wells a loss. The trial court's determination of the elements of Wells' costs, other than the rental value of equipment in the first cross-claim is not clearly erroneous and is affirmed.
 
 NIAGARA V. HAILEY
 
 35
 In the second action, plaintiff-appellants County of Niagara and Niagara County Water District appeal from a judgment dismissing their complaint to recover $88,475.91 for extra work payments made to defendant Hailey.
 
 
 36
 Hailey undertook to construct the pipeline for a lump sum of $1,236,386 for all of the labor, services and material necessary to accomplish the work specified. Hailey's bid clearly stated that it agreed to do whatever was necessary to fulfill the contract specifications for a lump sum. The complaint alleges that the payments for extras were for work which was included within the scope of the contract and therefore were payments made by mistake. Niagara also claims that as payments for work which the contractor was already bound to perform, these payments were without consideration and void under Section 10, Article IX of the Constitution of the State of New York.
 
 
 37
 The district court found that the payments to Hailey for 'extras' were paid under the provisions of the contract relating to change orders. However, we believe that the court failed to make the crucial finding: Whether or not Hailey was required to do the work for which it was paid extra by the terms of the contract without a change order.
 
 
 38
 Section 10, Article IX of the New York Constitution, formerly Art. III, 28, prohibits 'grant of any extra compensation to any * * * contractor.' In T.J.W. Corporation v. Board of Higher Education of the City of New York,276 N.Y. 644, 12 N.Ed.2d 800 (1938), a case remarkably similar to the one before us, the New York Court of Appeals affirmed a directed verdict for defendant Board of Education to recover on its counterclaim for payments made by mistake for work that was within the scope of the lump sum contract and not extra work, as plaintiff claimed. New York law is clear; Niagara is entitled to recover any payments for work which Hailey was required to perform under the terms of the contract.
 
 
 39
 Hailey argues that, as 10, Article IX was repealed in 1963, Niagara cannot recover. However, the cases cited, Bloch v. Frankfort Distillery, Inc., 247 App.Div. 64, 288 N.Y.S. 749 (1st Dept. 1936); Lido Capital Corp. v. Eskelsen, 162 Misc. 323, 295 N.Y.S. 163 (1936); Lido Capital Corp. v. Vogel, 161 Misc. 48, 291 N.Y.S. 92 (1936), all deal with contracts for purchase and sale of alcoholic beverages entered before the end of Prohibition. They are exceedingly weak authority for the general principle that all repeals of constitutional provisions are retroactive unless containing a provision to the contrary. However even if we were to accept this as a principle of construction, the amendment repealing the section in question provided for an effective date of January 1, 1964. Certainly we cannot give retroactive effect to a statute having a specific effective date. Therefore 10, Article IX is applicable to the payments in question, which occurred prior to January 1, 1964. Judgment is reversed and the case is remanded for determination as to which, if any, extra payments were for labor services and materials which appellee was under a duty to supply without a change order.
 
 
 40
 In summary, the judgment in Hailey v. Niagara is affirmed except that in intervenor Wells' first cross-claim the trial court's finding that Wells is entitled to recover the reasonable rental value of its equipment plus 15% Profit is reversed and judgment in the second cross-claim is reduced to $26,934.51. We remand for determination of the actual cost to Wells of the operation of its equipment plus 15% Profit. The judgment in Niagara v. Hailey is reversed and the case is remanded for the entry of judgment in favor of Niagara as to payments, if any, which the district court finds were made by mistake for work which Hailey was required to perform under the contract.
 
 
 
 [1]
 The parties and the district court referred to the claims of intervenor Wells as 'cross-claims.' Technically only claims against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to property that is the subject matter of the original action should be denominated as cross-claims. Fed.R.Civ.P. 13(g). 3 Moore, Federal Practice P13.18. In the interest of simplicity and consistency we have continued to refer to Wells' causes of action as 'cross-claims.'
 
 
 [2]
 The trial court adopted Wells' damage computations for the first and second cross-claims. They are as follows:
 "First Claim.
 Removing and replacing damaged and misplaced pipe:
 --Labor ................................. $33,685.25
--Compensation Insurance
 (11% of labor costs) ................... 3,705.37
--Overhead
 (25% of labor costs) ................... 8,421.31
--Miscellaneous Expenses
 (463 hours at $24.70) ................. 11,436.10
--Rental of derrick scow
 (58-8 hour tricks at $400) ............ 23,200.00
--Rental of Tug
 (58 tricks at $50.00) ................ 2,900.00
--Rental of dipper dredge
 (8 tricks at $600) ..................... 4,800.00
 ----------
 Direct Cost .......................... 88,148.03
 Profit at 15% ........................ 13,222.20
 ----------
 Total Claim ......................... 101,370.23
 Advance paid ......................... 25,000.00
 ----------
 Balance ............................. $76,370.23 $76,370.23
 "Second Claim.
 Delay and unproductive work occasioned by the fact that the trench
 had not been excavated between Station 170 k 08 and Station 164 k 40.
 --Labor ................................. $ 7,608.98
--Compensation Insurance
 (11% of labor cost) ..................... 836.98
--Overhead
 (25% of labor cost) .................... 1,902.24
--Miscellaneous Expenses
 (138 1/2 hrs. at $24.70 ................ 3,420.95
--Rental Derrick Scow
 (14 days at $400) ...................... 5,600.00
--Rental Tug
 (14 days at $50.00) ...................... 700.00
--Rental Dipper Dredge
 (8 days at $600) ....................... 4,800.00
 ----------
 Direct Cost .......................... 24,869.15
 Profit at 15% ......................... 3,730.36
 ----------
 Balance ............................. $28,599.51 $28,599.61"
 'First Claim.
 Removing and replacing damaged and misplaced pipe:
 'Second Claim.
 Delay and unproductive work occasioned by the fact that the trench had not been excavated between Station 170 k 08 and Station 164 k 40.
 
 
 [3]
 The total annual depreciation which Wells charged against this equipment was only $2,272.25 and the original cost of the equipment was $77,258.96, only slightly more than twice the rental charges which Wells seeks to recover