**INDU CRAFT, INC., Plaintiff–Appellant–Cross–Appellee,**

v.

**BANK OF BARODA, Defendant–Appellee–Cross–Appellant, Counterclaim–Plaintiff,**

**Krishnakant C. Chokshi, Defendant–Appellee.**

Nos. 210, 330, Docket 94–7089, 94–7127.

United States Court of Appeals, Second Circuit.

Argued Sept. 2, 1994.

Decided Feb. 3, 1995.

Peter J. Schmerge, New York City (Jona-than A. Chase, Michele C. Petitt, Eaton & Van Winkle, of counsel), for appellant Indu Craft, Inc.

Frank H. Penski, New York City (Nixon, Hargrave, Devans & Doyle, of counsel), for appellees Bank of Baroda and Krishnakant C. Chokshi.

Before: KEARSE, CARDAMONE, and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

Plaintiff Indu Craft, Inc. appeals and defendant Bank of Baroda cross-appeals from a judgment of the United States District Court for the Southern District of New York, Bernikow, Magistrate Judge, granting in part and denying in part the Bank's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 after a four-week jury trial in an action based on a revolving credit agreement between Indu Craft and the Bank. Krishnakant C. Chokshi, an officer of the Bank, was also named as a defendant. Under the agreement the Bank would make advances to and issue letters of credit on behalf of Indu Craft for the purpose of financing its business. When Indu Craft refused to make an investment for the benefit of Chokshi's son, the Bank reduced Indu Craft's line of credit and took other steps that effectively drove it out of business.

Plaintiff filed suit against the Bank in October 1987, alleging three causes of action, only two of which are relevant to this appeal. The first of these causes of action was that the Bank breached its covenant of good faith and fair dealing implied in the revolving credit agreement; the second cause of action alleged that the Bank and Chokshi commit-ted a *prima facie* tort against plaintiff. The Bank counterclaimed for approximately $1.7 million that Indu Craft still owed it under the line of credit loan. The action was referred for all purposes to the magistrate judge, where a jury trial was held. The jury returned a $3.25 million verdict in plaintiff's favor on the contract and *prima facie* tort causes and a verdict also in its favor on the Bank's $1.7 million counterclaim. The Bank then moved for judgment as a matter of law or, in the alternative, for a new trial with respect to both verdicts.

The magistrate judge, in a ruling that is the subject of this appeal, held that neither of Indu Craft's contract and tort causes of action could stand. While it found Indu Craft had shown a breach of the implied covenant of good faith, it also believed plaintiff had failed to prove damages and that the tort damages returned by the jury were duplicative of the contract damages. This ruling wiped out plaintiff's $3.25 million jury verdict. The magistrate judge at the same time denied the Bank's motion for judgment on its $1.7 million counterclaim against plaintiff because, as it stated, the Bank had prevented Indu Craft from performing under the note.

In our view the magistrate judge wrongly deprived plaintiff of its $3.25 million jury verdict on its contract and tort causes of action, and also wrongly denied the Bank's motion for judgment on its $1.7 million counterclaim, perfectly illustrating the accuracy of the proverb that "two wrongs don't make a right."

## BACKGROUND

Indu Craft is a New York corporation that imported ladies' sportswear from the Far East and sold those goods at wholesale in the United States. Its founder, president and sole shareholder was Hemant C. Mehta. The business involved placing orders for garments with plaintiff's foreign suppliers and promptly arranging for the issuance of letters of credit in their favor. The letter of credit guaranteed the manufacturer of the goods that it would be paid when the garments were shipped. In those foreign coun-

tries where Indu Craft's suppliers were located, letters of credit were needed by manufacturers to ensure compliance with quota restrictions on exports. Normally, suppliers will not ship—and sometimes will not even begin to manufacture—garments until they receive a letter of credit. Because the garment industry is, by its very nature, seasonal, delay is very detrimental in selling a line of clothes. Due to this time factor, a delay in the issuance of a letter of credit inevitably results in a slowdown of production or a holding up of the shipment of merchandise, causing a concomitant loss of business.

As a result of the good relationships between Indu Craft and its suppliers, and contrary to industry practice, its manufacturers often began production of garments relying on the assurance that a letter of credit would be speedily forthcoming. Swift delivery was a critical element in Indu Craft's success, enabling its merchandise to appear in American retail stores earlier than its competitors' garments. The benefit of timeliness increased initial sales and created generally more profitable reorders.

Indu Craft's relationship with the Bank began in 1983 when it was granted a $500,000 line of credit. The line of credit was periodically increased, reaching $2.7 million in December 1986. The line then included an overdraft facility of $1.2 million. During this period the relationship between plaintiff and defendant was marked by informality. In some instances credit was increased despite a decline in Indu Craft's sales or its failure to realize sales projections. On numerous occasions plaintiff was permitted to exceed its line of credit overdraft limit, sometimes by as much as 40 percent. Further, the Bank typically granted applications for letters of credit within 24 hours of application. This ready access to credit gave Indu Craft an ability to have its merchandise manufactured and shipped quickly to the United States.

The connection between plaintiff and defendant began to wear thin in November 1986 following a discussion in which Chokshi suggested that Mehta invest in a computer business for the benefit of Chokshi's son, Anil. After evaluating this proposal Mehta determined not to invest and informed Chok-

shi and Anil of his decision in February 1987. A month later the Bank demanded that Indu Craft immediately reduce its $1.3 million overdraft to its pre-set limit of $1.2 million. Defendant then informed plaintiff, without prior notice, that its line of credit had been reduced from $2.7 million to $2.3 million and the overdraft sublimit reduced from $1.2 million to $1.0 million. Chokshi conceded at trial that he had falsely informed Indu Craft that this reduction was directed by the Bank's central office in Bombay, India, when in fact the central office had no knowledge of the reduction.

After Mehta's rejection of the proposal to invest in the computer business for Anil Chokshi, further letters of credit were substantially delayed, if issued at all. The Bank also began to demand that applications for such letters be backed by confirmed orders from 100 percent of Indu Craft's customers. That requirement had never before been imposed, and it was not then imposed on other Bank customers seeking letters of credit. Defendants knew that commercial practices in the garment industry made a requirement of confirmed orders commercially impossible to comply with. No letters of credit were issued to Indu Craft after May 4, 1987.

From April through September 1987 Indu Craft complained to the Bank's central offices about the curtailment of its credit and the difficulties it was experiencing obtaining letters of credit. Numerous Bank officers repeatedly told plaintiff that its credit would be restored and its difficulties solved. Nonetheless, because of the delays and refusal by the Bank to issue new letters of credit, Indu Craft's suppliers stopped producing goods and delayed shipment of those goods they did produce. Garments arrived late and had to be sold at substantial discounts. As a result, Indu Craft ceased operations in November 1987 and brought the instant action against the Bank.

At trial the jury found the Bank's actions were not taken in good faith but grew out of Mehta's refusal to invest in the computer business for Anil Chokshi and thus violated the covenant of good faith and fair dealing implied in the loan documents. The jury also found the Bank and Chokshi acted with mal-

ice to injure Indu Craft and that such action constituted a *prima facie* tort. Plaintiff was found by the jury to have been damaged in the amount of $3 million on its contract claim, but it was also found to have failed to mitigate $1 million of this amount. In addition, the jury awarded plaintiff $1.25 million on its *prima facie* tort claim. Prior to being discharged, the jury was polled and stated it was their intention that the cumulative award to Indu Craft be $3.25 million. On the Bank's counterclaim for the $1.7 million due on the note, the jury concluded that the Bank had wrongfully interfered and prevented Indu Craft from repaying the loan and thereby denied the Bank any recovery on its counterclaim.

When, as noted earlier, the Bank moved for judgment as a matter of law contending that all the jury verdicts should be overturned as a matter of law, the magistrate judge found that although plaintiff had proven the loss of value of its business as a going concern, it had failed to produce proof of its variable expenses and fixed costs. Thus, the magistrate concluded plaintiff had failed to prove lost profits, requiring a judgment dismissing the jury's contract damages award. The magistrate also vacated the *prima facie* tort award on the grounds that it was duplicative of the contract damages award. The magistrate upheld the jury's verdict on the Bank's counterclaim, observing that the Bank's actions taken in bad faith wrongfully prevented Indu Craft from repaying the note.

Indu Craft appeals the grant of judgment as a matter of law with respect to its contract and tort causes of action and the Bank appeals the denial of judgment with respect to its counterclaim. For the reasons stated below we reverse and remand with directions to the magistrate judge to reinstate the jury verdicts on plaintiff's contract and tort causes of action, and also reverse the denial of defendant's motion for judgment on its counterclaim and remand for the magistrate judge to grant that motion.

## DISCUSSION

■ We discuss briefly at the outset our scope of review from a grant or denial of judgment as a matter of law. On appeal, we apply the same standard as the trial court, determining whether "viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)). Our review is *de novo*. See *Fiataruolo v. United States*, 8 F.3d 930, 938 (2d Cir.1993); *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1046 (2d Cir.1992). We turn to an analysis of the merits.

## I Contract Award

■ The magistrate judge determined that Indu Craft presented sufficient evidence to prove the loss of its value as an ongoing business. It also determined that plaintiff's evidence of lost profits failed to take into account variable and fixed costs and was therefore insufficient as a matter of law. Faced with adequate proof of the lost value of the business and inadequate proof of lost profits, the trial court nonetheless granted judgment as a matter of law in favor of the Bank. While we agree with the magistrate judge's conclusions regarding the sufficiency of the proof regarding loss of value and the insufficiency of the lost profits evidence, we are unable to adopt the trial court's view that the evidence, as a whole, failed to support the jury's damages award.

### A. *Proof*

We summarize the evidence presented to support these two methodologies of proving loss. Plaintiff's owner, Mehta, testified at trial regarding the calculation of lost profits, which proof was contained in a four volume document admitted into evidence. It furnished factual information on cost of goods sold and sales prices received to establish gross profits for these same goods. With respect to goods whose delivery was delayed, the document and summary sheets reflected the actual costs and actual sales to arrive at one component of lost profits. With respect

to goods never imported, the exhibit projected the costs of the goods and projected sales to arrive at the other component of lost profits. These were added together to arrive at gross lost profits of approximately $2.6 million.

Indu Craft's expert witness, Bernard Augen, testified as to a valuation of Indu Craft's business. Valuation began with Indu Craft's stated earnings from its 1986 fiscal year, which were used to project earnings for fiscal 1987. Augen testified that fiscal 1986 earnings were used because earnings in fiscal 1987 were affected by a non-recurring event, an embargo of a country from which Indu Craft imported garments. The exclusion of non-recurring events was referred to as "normalizing." Augen then assumed earnings growth from fiscal 1986 to fiscal 1987 based on Indu Craft's historical earnings growth and multiplied this number by an earnings multiplier—based on earnings of publicly traded companies in the apparel industry—to arrive at a range of values for plaintiff's business.

Augen stated that apparel companies had multipliers ranging from 5.2 to 11. Due to Indu Craft's small size relative to publicly traded companies, multipliers at the low end of the range were used. Using this valuation process the expert witness arrived at values for Indu Craft ranging from $3.3 million to $5 million, with a mid-range of $4.3 million.

## B. *Law of Damages*

We begin analysis of this proof by noting that "[t]he general rule for measuring damages for breach of contract has long been settled. It is the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." *Adams v. Linblad Travel, Inc.,* 730 F.2d 89, 92 (2d Cir.1984); *see also* 5 Arthur L. Corbin, *Corbin on Contracts,* § 992, at 5 (1964); 11 Samuel Williston, *A Treatise on the Law of Contracts,* § 1338, at 198 (3d ed. 1968). In implementing this general rule, we have stated that when computing damages for a defendant's wrongful conduct, "if any benefit or opportunity for benefit appears to have accrued to the plaintiff because of the breach, a balance

must be struck between benefit and loss, and the defendant is only chargeable with the net loss." *S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 852 (2d Cir.1987) (*quoting Stern v. Satra Corp.,* 539 F.2d 1305, 1311–12 (2d Cir. 1976)).

■ These precepts require that revenues due a plaintiff because of a breached contract must be offset by any amount plaintiff saved as a result of the breach. In the typical contract action such an offset usually consists of variable costs, that is, those costs that would have been incurred solely as a result of performance under the contract. *See, e.g., Linblad Travel,* 730 F.2d at 92–93. But when the breach brings an end to a plaintiff's business the sums to be offset may often include, in addition, fixed costs. Fixed costs are those expenses that would have been incurred as a result of the overall operation of a business, including overhead such as rent, utilities, insurance, salaries and the like.

## C. *Resolution of Damages Proof*

Indu Craft concedes that it proffered no evidence with respect to fixed costs. Decisional law analyzing the role of fixed costs in damages calculations is sparse since most breaches of contract in a business setting do not result in the termination of a business. Plaintiff relies on our decision in *Linblad Travel,* 730 F.2d at 93, for its view that overhead costs need not be deducted from income to calculate damages. That reliance is misplaced. *Linblad* determined that fixed costs should not have been included in the damages calculation where plaintiff was an ongoing business whose fixed costs were not affected by the breach. *Id.*

In the present case, plaintiff's cessation of business may very well have reduced or eliminated fixed overhead costs. Such savings, resulting from the Bank's breach, are properly offset from lost profits. Hence, the failure to deduct fixed costs when utilizing lost profits to calculate damages renders such measurement too imprecise for judicial use. However, proof of lost profits is but one method of proving the amount necessary to restore plaintiff to the economic position he would have been in absent the breach. An

alternative methodology, extrapolating the value of a business as an ongoing entity from the company's past earnings, establishes a plaintiff's damages without suffering the same defect. By resorting to past earnings, this methodology already incorporates the necessary deduction of fixed and variable costs, providing an accurate measurement of plaintiff's loss as adjusted for savings resulting from the breach.

■ In fact, when the breach of contract results in the complete destruction of a business enterprise and the business is susceptible to valuation methods, such an approach provides the best method of calculating damages. *Cf. Sharma v. Skaarup Ship Management Corp.*, 916 F.2d 820, 825 (2d Cir.1990) ("where the breach involves the deprivation of an item with a determinable market value, the market value at the time of the breach is the measure of damages"), *cert. denied*, 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991). The methodology of determining a business's earnings and applying an earnings multiplier to fix the value of a business that was completely terminated is one we have approved. *See Lamborn v. Dittmer*, 873 F.2d 522, 533–34 (2d Cir.1989).

The Bank attacks various aspects of the testimony offered by the plaintiff's expert. To the extent he departed from general valuation practices or adopted procedures subject to criticism, defendant had ample opportunity to elicit these facts and argue them to the jury. The expert's training and background and the procedures he followed in arriving at a valuation presented the jury with the question of whether or not to accept the expert's opinion and what weight to give it. *See Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 550 (2d Cir.1989).

■ Further, when reviewing the sufficiency of the damages evidence, we are guided by the principle that if a plaintiff has shown it more likely than not that it has suffered damages, the amount of damages need only be proved with reasonable certainty. *See W.L. Hailey & Co. v. County of Niagara*, 388 F.2d 746, 753 (2d Cir.1967) (collecting New York cases). New York has long had an established rule that:

[W]hen it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain.

*Wakeman v. Wheeler & Wilson Mfg. Co.*, 101 N.Y. 205, 209, 4 N.E. 264 (1886); *see Randall–Smith, Inc. v. 43rd St. Estates Corp.*, 17 N.Y.2d 99, 105–06, 268 N.Y.S.2d 306, 215 N.E.2d 494 (1966). The wrongdoer must shoulder the burden of the uncertainty regarding the amount of damages. *See Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir.1977). Indu Craft's proof of value of its business as a going concern was adequate to meet these tests for sufficiency.

After expressly finding that plaintiff's proof of lost value was sufficient, we are at a loss as to why the trial court then set aside the jury award. The jury's special verdict sheet made no distinction between the two methods of proving damages, and the figures were well within the range testified to by plaintiff's expert who set a low value of $3.3 million and a mid-range of $4.3 million. The jury found that Indu Craft was damaged in a total amount of $4.25 million, less $1 million for a failure to mitigate, for net total damages of $3.25 million. Had lost profits evidence not been presented, evidence of the lost value of Indu Craft as a going enterprise, standing alone, would have been sufficient to support the jury's award of damages. Hence, the judgment as a matter of law with respect to the contract claim must be reversed and the jury award reinstated, although the award must be modified as we discuss in a moment.

## II *Prima Facie* Tort Award

■ We pass now to discussion of the grant of the motion for judgment as a matter of law setting aside the *prima facie* tort jury award. That award was amply justified by the proof. The Bank and Chokshi engaged in deliberate delay in issuing letters of credit

and made an unprecedented demand only on plaintiff that such letters be backed by confirmed orders from all of plaintiff's customers. Their conduct ultimately drove Indu Craft out of business. The jury was entitled to find that this web of wrongdoing was not woven by innocent hands. Clearly the same wrongdoing also served as the basis for the jury finding that defendants intentionally acted with malice and without excuse to injure Indu Craft, thereby committing a *prima facie* tort against plaintiff. *See Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142, 490 N.Y.S.2d 735, 480 N.E.2d 349 ("Prima facie tort affords a remedy for the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful." (internal quotes omitted)).

As pointed out above, the jury awarded Indu Craft $2 million on its breach of contract claim, after adjusting for its failure to mitigate damages, and $1.25 million on its *prima facie* tort claim. Upon plaintiff's counsel's request, the trial court asked the jury foreman if the jury meant Indu Craft to receive a total award of $3.25 million or if the *prima facie* tort award was meant to be subsumed by the larger contract award. The foreman responded that the intended award was $3.25 million, which, upon being polled, the jury confirmed. The magistrate then ruled on the motion for judgment as a matter of law that the awards were duplicative for the same injury and vacated the *prima facie* tort award.

 A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery. *See Wickham Contracting Co. v. Board of Educ.*, 715 F.2d 21, 28 (2d Cir.1983). The question we must answer was whether this doctrine was violated by the jury's award for defendants' *prima facie* tort. A court's role is to reconcile and preserve whenever possible a seemingly inconsistent jury verdict. *See Machleder v. Diaz*, 801 F.2d 46, 57 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987); *Minpeco, S.A. v. Hunt*, 718 F.Supp. 168, 181 (S.D.N.Y. 1989). This role derives from the Seventh Amendment's obligation on courts not to re-

cast factual findings of a jury, *see Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962), and is based on the notion that "juries are not bound by what seems inescapable logic to judges." *Morissette v. United States*, 342 U.S. 246, 276, 72 S.Ct. 240, 256, 96 L.Ed. 288 (1952).

The jury's award of a net total of $3.25 million was in accordance with the expert's testimony. While it is possible that the jury impermissibly compensated Indu Craft twice for the same injury, it is equally rational to believe that the jury found that Indu Craft suffered $3.25 million worth of injuries and merely allocated that amount between the two different causes of action, one for breach of contract and one for tort. *See Gentile v. County of Suffolk*, 926 F.2d 142, 153–54 (2d Cir.1991) (where jury awarded $75,000 for state malicious prosecution claim and $75,000 for federal § 1983 claim, conceivable that jury found $150,000 of unduplicated injuries and merely split the amount equally).

 That the jury meant the total award to be $3.25 million is clearly supported by their responses when being polled after the verdict. A jury's award is not duplicative simply because it allocates damages under two distinct causes of action. *See id.* at 154. The Bank made no showing other than the allocation of the award. Thus, it failed to establish the jury awards were duplicative. Because of our duty to reconcile a jury's verdict whenever possible, we think this award easily reconcilable and see no impermissible double recovery in the jury contract and tort awards. As a consequence, the judgment must be reversed and the jury's *prima facie* tort award reinstated.

### III The Counterclaim

 We now consider the remaining issue, which is the denial of the Bank's motion for judgment as a matter of law on its $1.7 million contract claim after the jury returned a no cause for action against it. Under its line of credit Indu Craft owed the Bank approximately $1.7 million for which the Bank asserted a counterclaim. Plaintiff admits this amount was outstanding, but maintains the Bank's actions in driving it out of

business prevented it from performing under the note and thereby excuse performance. This "prevention doctrine" is often viewed as a corollary to the implied covenant of good faith. *See Sharma v. Skaarup Ship Management Corp.*, 699 F.Supp. 440, 449 (S.D.N.Y.1988), *aff'd*, 916 F.2d 820 (2d Cir. 1990), *cert. denied*, 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991). The jury agreed that the Bank prevented plaintiff's performance and returned a verdict on the counterclaim in favor of Indu Craft. The district court denied the Bank's motion for judgment as a matter of law.

While the parties have exerted much energy disputing the applicability of the prevention defense to the note, we are persuaded by a more compelling rationale urged by the Bank that judgment should have been granted. It is the purpose of damages under a breach of contract action to place the aggrieved party in the same economic position that it would have occupied absent the breach. *See Linblad Travel*, 730 F.2d at 92. Awarding Indu Craft the value of its business and at the same time relieving it from its obligation under the note actually places Indu Craft in a better economic position than it would otherwise have occupied, a result the law disfavors. To avoid such a windfall and place Indu Craft in the position it would have been in but for the Bank's breach of contract, the debt under the note must be set off from the damages owed Indu Craft.

## CONCLUSION

Accordingly, we reverse the magistrate judge's disposition of the motion for judgment as a matter of law and remand to that court for it to reinstate the jury verdicts on Indu Craft's breach of contract and *prima facie* tort causes of action totalling $3.25 million, and for it to offset this total by the amount due the Bank under the note amounting to approximately $1.7 million, by granting the Bank's motion for judgment under its contract claim.

Reversed and remanded.