98 F.3d 514
 1997 A.M.C. 92, 96 Cal. Daily Op. Serv. 7787,
96 Daily Journal D.A.R. 12,893
 Vilmos FUSZEK, Plaintiff-Appellant,
v.
ROYAL KING FISHERIES, INC., a Washington corporation; Ft
Royal King, # 592205; and Royal Seafoods, Inc., a
Washington corporation, Defendants-Appellees.
Vilmos FUSZEK, Plaintiff-Appellee,
v.
ROYAL KING FISHERIES, INC., a Washington corporation; Royal
Seafoods Inc., a Washington corporation,
Defendants-Appellants,
and
Ft Royal King, # 592205, Defendant.
Vilmos FUSZEK, Plaintiff-Appellant,
v.
ROYAL KING FISHERIES, INC., a Washington corporation; Royal
Seafoods Inc., a Washington corporation,
Defendants-Appellees,
and
Ft Royal King, # 592205, Defendant.
 Nos. 95-35197, 95-35840 and 95-35874.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 9, 1996.
Decided Oct. 23, 1996.
 
 Howard M. Goodfriend, Edwards, Sieh, Hathaway, Smith & Goodfriend, Seattle, WA; David Merritt Beninger, Luvera, Barnett, Brindley, Beninger & Cunningham, Seattle, WA, for plaintiff-appellant-cross-appellee.
 Robert N. Windes, LeGros, Buchanan & Paul, Seattle, WA, for defendants-appellees-cross-appellants.
 Appeals from the United States District Court for the Western District of Washington, William L. Dwyer, District Judge, Presiding. D.C. No. CV-93-01247-WLD.
 Before: LAY,* FERGUSON, and LEAVY, Circuit Judges.
 LEAVY, Circuit Judge:
 
 
 1
 In these consolidated appeals we are called upon to determine whether section 3 of the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 53, overrides the longstanding maritime doctrine of comparative fault in a situation in which a ship's violation of a safety regulation contributed to a seaman's injuries. Under the facts of this case, we hold that FELA precludes the reduction of damages on the ground of comparative fault.
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 The FT ROYAL KING is a factory trawler owned by Royal King Fisheries, Inc. and operated by Royal Seafoods, Inc. In February 1993, the ROYAL KING was fishing and processing cod in the Bering Sea off the coast of Alaska. Vilmos Fuszek served aboard the vessel as a fish processing machine technician. Fuszek's duties were to assist in the operation and maintenance of the ROYAL KING's Baader 99 machine, which cuts whole fish into filets and dumps the unusable portions into an offal conveyor.
 
 
 3
 The ship's captain described the ROYAL KING's Baader 99 as a "piece of junk." Most of its original safety features had been removed; it ran poorly, jammed frequently, and could be kept running only with the constant intervention of both the factory superintendent and Fuszek. In order to avoid processing delays,[1] the ROYAL KING's factory superintendent adopted the policy of clearing jams without turning the machine off; i.e., the operator had to reach into the machine and clear away any fish debris by hand while the machine was still running.
 
 
 4
 On February 28, 1993, Fuszek reached into the running machine to clear a jam and the glove on his right hand caught in a moving gear. His hand was severely lacerated and partially crushed. Two years and three surgeries later, Fuszek's injuries still prevented him from returning to work as a Baader 99 technician.
 
 
 5
 Fuszek timely filed the instant admiralty action in federal district court against the vessel, its owner, and its operator (collectively, "defendants"), seeking relief under general admiralty and maritime law as well as under the Jones Act, 46 U.S.C.App. § 688(a). At the conclusion of the trial, the district court held, inter alia, that the portion of the ROYAL KING occupied by the Baader 99 machine was unseaworthy and the vessel's owner and operator were negligent in maintaining the defective machine. The court entered judgment in favor of Fuszek but reduced his damage award by 25%, based on the court's finding that Fuszek's injuries were partially due to his own negligence. Fuszek filed a timely notice of appeal, arguing that section 3 of FELA prohibits a court from reducing a seaman's damage award for comparative negligence where the injury sustained was due to the employer's violation of a federal safety regulation.
 
 
 6
 The district court subsequently entered an order taxing the defendants with most of Fuszek's deposition costs while rejecting the defendants' request that their deposition costs be taxed against Fuszek. The defendants timely appealed, arguing that Fuszek's pretrial rejection of their offer of judgment under Fed.R.Civ.P. 68, which was more than the judgment, entitled the defendants to recover their deposition costs from Fuszek and precluded him from recovering his deposition costs from them. Fuszek timely cross-appealed, challenging the district court's taxation against him of the defendants' photocopying costs incurred after the settlement offer, while rejecting Fuszek's photocopying bill.
 
 ANALYSIS
 
 7
 * Fuszek first contends that the district court erred by reducing his damage award in an amount equal to the degree of his comparative negligence, because federal statutory law effectively overrides the maritime common law doctrine of comparative fault in situations in which seamen are injured by machinery that is not in compliance with federal safety regulations. We review de novo the district court's interpretation of federal law. See Newman v. Chater, 87 F.3d 358, 361 n. 2 (9th Cir.1996).
 
 
 8
 One of the three nearly insurmountable barriers long faced by workmen seeking to recover damages for injuries sustained in the workplace was the common law doctrine of contributory negligence.[2] In 1908, however, Congress passed the first of what came to be known as the Federal Employers' Liability Acts, and thereby effectively abrogated the doctrine of contributory negligence in favor of comparative fault for railroad employees. See 45 U.S.C. § 53; W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 67 at 471 n. 21 (5th ed. 1984).
 
 
 9
 With this as our historical starting point, we begin by noting that the Jones Act expressly grants to seamen the rights and remedies available to railroad workers under FELA. See 46 U.S.C.App. § 688(a) ("Any seaman who shall suffer personal injury in the course of his employment may ... maintain an action for damages at law ... and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."). Accord Kernan v. American Dredging Co., 355 U.S. 426, 439, 78 S.Ct. 394, 401-07, 2 L.Ed.2d 382 (1958).
 
 Section 3 of FELA provides:
 
 10
 In all actions ... brought against any ... common carrier ... to recover damages for personal injuries to an employee, ... the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured ... shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury ... of such employee.
 
 
 11
 45 U.S.C. § 53 (in relevant part; emphasis in original).
 
 
 12
 One example of just such a "statute enacted for the safety of employees" (viz., seamen) is 46 U.S.C. § 4502(b)(2)(G). That statute provides, in relevant part, that "the Secretary shall prescribe regulations requiring the installation, maintenance, and use of ... equipment ... required to minimize the risk of injury to the crew during vessel operations, if the Secretary determines that a risk of serious injury exists that can be eliminated or mitigated by that equipment."
 
 
 13
 It is in line with section 4502(b)(2)(G) that the Coast Guard promulgated 46 C.F.R. § 28.215.[3] That regulation--which both sides concede applies here--requires all exposed machinery on board a vessel to have suitable hand covers. As it is undisputed that Fuszek was injured by exposed machinery on board a vessel lacking a suitable hand cover, Fuszek argues that his claim falls within the narrow statutory exception carved out by the Jones Act's incorporation of FELA § 3 to the general maritime common law rule of comparative fault, with the result that his damage award should be exempt from any reduction for comparative fault. We agree.
 
 
 14
 In the case of Roy Crook & Sons, Inc. v. Allen, 778 F.2d 1037 (5th Cir.1985) (on denial of reh'g), the Fifth Circuit adopted a broad reading of the Jones Act's incorporation of FELA § 3 and held that an employer's violation of a safety statute that was designed to protect its employees precluded the district court, sitting in admiralty, from considering the comparative fault of the injured employee-claimant. Id. at 1041, 1043. More to the point, the Fifth Circuit earlier held that a regulatory--not statutory--violation could amount to negligence per se under the Jones Act if five elements were met: "(1) a violation of Coast Guard regulations, (2) the plaintiff's membership in the class of intended beneficiaries of the regulations, (3) an injury of a type against which the regulations are designed to protect, (4) the unexcused nature of the regulatory violation, and (5) causation." Smith v. Trans-World Drilling Co., 772 F.2d 157, 160 (5th Cir.1985). Accord 1 T. Schoenbaum, Admiralty and Maritime Law, § 6-22 at 322 & nn. 31, 32 (2d ed. 1994).
 
 
 15
 We find the Fifth Circuit's reasoning in Roy Crook and in Smith not only to be highly persuasive, but consistent with our decision in Kopczynski v. The Jacqueline, 742 F.2d 555 (9th Cir.1984), cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). Kopczynski involved a seaman who had been injured while working aboard a moored vessel. The injured seaman argued that the Jones Act's incorporation of FELA § 3 precluded the district court from reducing his damage award for comparative negligence, because his injuries were attributable, at least in part, to the vessel's failure to comply with certain OSHA regulations. 742 F.2d at 557-58.
 
 
 16
 The district court rejected the seaman's argument, holding that the vessel's negligence was attributable to its violation of an OSHA regulation regarding the use of gangways and ladders, and such regulations were promulgated not for the protection of seamen but for the protection of longshoremen and harborworkers. Id. at 558. Although we upheld the district court's ruling, we noted in passing that the seaman could have recovered in full (i.e., without any reduction for comparative fault) if he had been injured while at sea and his injuries had been due to negligence attributable to the violation of a Coast Guard regulation, because "The Coast Guard is the primary federal agency which exercises authority over the working conditions of seamen." Id. at 559.
 
 
 17
 In light of the above, we hold that the district court erred by reducing Fuszek's damage award for comparative negligence. The ship was in unexcused violation of a Coast Guard safety regulation that was designed not only to protect members of the class to which Fuszek belonged, but also to prevent the type of injury he sustained. See Smith, 772 F.2d at 160. See also Brooker v. Cleghorn, 907 F.Supp. 1406, 1409-11 (D.Haw.1994) (district court struck vessel owner's defense of comparative negligence because seaman's injuries were attributable, at least in part, to vessel's being in violation of Coast Guard safety regulation designed to protect class of individuals to which seaman belonged).
 
 II
 
 18
 Fuszek argues in his cross-appeal from the defendants' Rule 68 challenge that the district court abused its discretion when it denied recovery of his photocopying expenses incurred before the defendants made their Rule 68 settlement offer while granting the defendants' post-settlement offer photocopying costs. In light of our holding above, the district court's award to the defendants must be set aside, as Rule 68 is inapposite.[4]
 
 
 19
 The only remaining question, then, is whether the district court abused its discretion by not awarding Fuszek his pre-offer photocopying expenses. See Fed.R.Civ.P. 54(d)(1). In light of the fact that Fuszek's counsel failed to itemize his copying expenses, we conclude that the district court did not abuse its discretion by ruling as it did.
 
 CONCLUSION
 
 20
 The district court's decision to reduce Fuszek's damage award by 25% for comparative negligence is REVERSED. The district court's award of post-settlement offer photocopying expenses is VACATED. The district court's denial of Fuszek's claimed photocopying costs is AFFIRMED. The district court's remaining rulings on taxation of costs are VACATED AS MOOT. Each side will bear its own costs on appeal.
 
 
 
 *
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The district court found--and the parties do not dispute--that, because the Alaskan cod season is short, and the economics of the industry are risky, great pressure is placed on vessels and their crews to avoid processing delays and thereby keep production levels high
 
 
 [2]
 The other two barriers were the assumption of risk doctrine and the so-called fellow servant rule. By way of comparison, injured seamen faced a much lower hurdle, because any negligence on their part served only to reduce the amount of their recovery, not bar it entirely. See, e.g., Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265 (1939) ("Under that doctrine [i.e., 'the established admiralty doctrine of comparative negligence,'] contributory negligence, however gross, is not a bar to recovery but only mitigates damages.")
 
 
 [3]
 Paragraph (b) of section 28.215 states, in relevant part, that "[s]uitable hand covers ... must be installed in way of machinery which can cause injury to personnel[.]"
 
 
 [4]
 The defendants argued on their appeal that, because Fuszek rejected their $550,000 settlement offer and failed to obtain a judgment of more than $550,000, the district court erred by failing to tax against Fuszek the cost of the depositions taken by the defendants and either used at trial or needed for trial preparation, while taxing against the defendants most of the deposition costs incurred by Fuszek
 The district court's final award totalled $559,908 plus interest before it was reduced for comparative negligence. In light of our holding that the award should not have been reduced for comparative negligence, this issue is moot.