**Auther JONES, Plaintiff–Appellant,**

v.

**SPENTONBUSH–RED STAR COMPANY,**
**Defendant–Appellee.**

**Docket No. 97–9586.**

United States Court of Appeals,
Second Circuit.

Argued May 18, 1998.

Decided Sept. 14, 1998.

Paul S. Edelman, Kreindler & Kreindler, New York, New York, for Plaintiff–Appellant.

James M. Hazen, Hill, Betts & Nash LLP, New York, New York, for Defendant–Appellee.

Before: WINTER, Chief Judge,
CARDAMONE, Circuit Judge, and
CARMAN *, Judge.

CARDAMONE, Circuit Judge:

This appeal by Auther Jones, a seaman employed as a deckhand aboard defendant's tugboat, is from a judgment entered in the United States District Court for the Southern District of New York before Judge Sidney H. Stein. While plaintiff Jones was under defendant's employ, he suffered an eye injury and subsequently sued defendant under the Jones Act and general maritime law, asserting claims for lost earnings, pain and suffering, and for maintenance and cure. The jury found for plaintiff, awarding him damages for his lost wages and for past pain and suffering. The trial judge set aside the verdict for lost wages and also reduced Jones' remaining damages under a theory of comparative negligence and denied him prejudgment interest.

This is that uncommon case where plaintiff suffers an injury for which defendant is lia-

---

* Hon. Gregory W. Carman, Chief Judge, United States Court of International Trade, sitting by designation.

ble, yet may not recover damages for lost wages due to a lack of proof showing that such loss was caused by his injury. Nor may plaintiff receive pre-judgment interest on his damages for pain and suffering because the actions he took in connection with this lawsuit were untimely. The more difficult issue we also must address is what effect should be given to a conceded violation by defendant of an Occupational Safety and Health Administration (OSHA) regulation. Plaintiff suggests such violation should, among other things, constitute negligence *per se.* For reasons that follow, we do not think Congress intended such a dogmatic use of an OSHA violation, and therefore decline to adopt that view.

## FACTS

Spentonbush–Red Star Co. (defendant or Spentonbush) operates a tugboat in New York Harbor named the CHAPLAIN. In March 1992 it hired Auther Jones to work as a junior deckhand. Prior to his dismissal, Jones had been promoted to senior deckhand. On June 21, 1993 plaintiff suffered an accident while operating a metal grinding wheel used to chip away paint and rust from the exterior of the tugboat's cabin bulkhead. Although Jones wore safety goggles, the grinding wheel itself had no safety guard, and a piece of metal debris from the wheel flew into the cornea of his left eye. After a hospital emergency room doctor referred Jones to a specialist, Jones' eye injury required medical treatment at several different clinics to remove all of the metal and heal the abrasion of his eye. Spentonbush provided transportation, paid his medical expenses and allowed him to sleep at headquarters, while he worked taking messages during his recovery. Plaintiff filed a request for medical treatment/evaluation with defendant on the date of his injury. His supervisor prepared an injury report the next day.

After several days of recuperation, Jones rejoined the tugboat and resumed his work as a deckhand. In a report dated July 6, 1993, he received a poor performance evaluation for his time aboard the vessel since June 9, 1993, and less than three weeks after the accident, on July 7, 1993, defendant terminated Jones' employment and benefits. Unable to obtain work aboard other tugboats in New York Harbor, Jones eventually went to Louisiana where he held various jobs on shore as a repairman and inspector, which paid him substantially less than what he had earned as a deckhand. He continues to suffer from headaches, blurred vision and night vision problems as a result of the accident.

Plaintiff commenced the present action in the Southern District of New York on June 12, 1996. His complaint alleged four separate causes of action. First, plaintiff claimed, pursuant to the Jones Act, 46 U.S.C.App. § 688 (1994), that defendant was negligent in furnishing him with a grinding wheel lacking a safety guard. Second, he asserted defendant violated its duty to outfit him with seaworthy equipment under general maritime law. With respect to these two claims, Jones sought damages for past and future pain and suffering and lost wages for the difference between his income as a deckhand and the amount he earned at his odd jobs in Louisiana. Third, Jones claimed defendant wrongfully refused to pay maintenance and cure for his injury. Finally, Jones believed he was wrongfully terminated in anticipation of his initiating legal action.

A jury trial was held on October 20 and 21, 1997 before Judge Stein. At trial, plaintiff proffered testimony from a maritime expert that the tugboat, as an uninspected vessel, was subject to the regulations of the Occupational Safety and Health Administration and that it was a violation of OSHA to operate a metal grinder without a guard. *See* 29 C.F.R. § 1910.243 (1997). Both parties agreed that the applicable OSHA regulation should be read to the jury. Judge Stein complied and included the regulation's relevant provisions as an insert with the charge. To bolster his claim for lost wages, Jones submitted his relevant income tax returns as proof of his income for the years preceding and following his accident.

Plaintiff introduced no evidence to establish his claim for wrongful termination and made no request that the claim be submitted to the jury. We therefore deem that claim abandoned. Further, at the close of evidence, defendant moved pursuant to Fed. R.Civ.P. 50(a) for judgment as a matter of law on plaintiff's claim for maintenance and

cure. The trial court granted the motion because no evidence was produced upon which a jury could make such an award. With respect to plaintiff's remaining claims for negligence and unseaworthiness, the defendant also moved for judgment as a matter of law on the issue of lost earnings, urging that plaintiff failed to show he was unable to return to work as a deckhand due to his eye injury. This motion was denied, and the lost income issue was submitted to the jury.

Judge Stein provided the jury with a special verdict form and instructed them on the necessary elements of plaintiff's negligence and unseaworthiness causes of action. The jury found not only that defendant was negligent under the Jones Act and the grinding wheel was unseaworthy under general maritime law, but also that these factors caused plaintiff's eye injury. It valued plaintiff's lost earnings at $62,575 and his past pain and suffering at $10,000, but awarded nothing for future pain and suffering. The jury then performed a comparative fault analysis and assigned plaintiff 25 percent of the responsibility for the accident.

Following the verdict, defendant renewed its motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), or, in the alternative, for a new trial pursuant to Fed. R.Civ.P. 59 on the issue of plaintiff's lost earnings. Spentonbush claimed the $62,575 award for lost earnings was unsupported by the evidence. The district court agreed and stated in its opinion that

> [t]he only possibly [sic] evidence in the record is that plaintiff made less money in the years following the accident then [sic] he did while working for defendant. However, the fact that plaintiff made less money post-accident than he did pre-accident does not support the inference that the accident itself was the cause of the reduced earnings.

The district court accordingly set aside the jury award for lost earnings and granted defendant judgment as a matter of law. It also conditionally granted defendant's motion for a new trial in the event we reversed its Fed.R.Civ.P. 50(b) ruling on lost earnings.

Judgment was entered on November 26, 1997, awarding plaintiff $7,500 for past pain and suffering, i.e., $10,000 less 25 percent for plaintiff's comparative negligence, but denying Jones' request for pre-judgment interest. Jones moved for reconsideration of the court's opinion and judgment. When that motion was denied, he filed the present appeal. We affirm.

## DISCUSSION

Plaintiff contends the district court erred in four respects by: (1) granting defendant judgment as a matter of law on the issue of lost earnings; (2) precluding plaintiff from introducing evidence of his prior good performance evaluations to support his claim for lost wages; (3) denying him pre-judgment interest; and (4) refusing to instruct the jury that an OSHA violation either establishes defendant's negligence *per se* or shifts the burden of proof on causation to the defendant, and precludes a comparative fault analysis. We address each issue in turn.

### I Lost Earnings Award Set Aside

■■ In ruling on a motion for judgment as a matter of law under Fed.R.Civ.P. 50(b), a district court must consider the evidence in the light most favorable to the non-movant, giving that party the benefit of all reasonable, favorable inferences the jury might have drawn from the evidence. *See Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 494 (2d Cir.1995); *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 16 (2d Cir.1993). The trial court is not to consider the credibility of the witnesses or otherwise assess the weight of conflicting evidence, since that function is given to the jury. *See Indu Craft, Inc.,* 47 F.3d at 494; *Samuels,* 992 F.2d at 16. Only when no evidence exists to support the jury's verdict and the verdict it reached could have been based on nothing more than surmise and conjecture or where there is such overwhelming evidence in favor of the movant that reasonable and fair-minded jurors could not arrive at a verdict against the movant, may a trial court properly grant a motion to set aside a jury verdict. *See Song v. Ives Lab., Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992). The same standard governs appellate review of the grant of such judgment. *See Binder v. Long Island Lighting Co.,* 57 F.3d 193, 199 (2d Cir.1995); *Indu Craft,* 47 F.3d at 494.

A plaintiff may recover compensatory damages for lost income in Jones Act and unseaworthiness cases. *See* 1B Gelpi et al., Benedict on Admiralty § 32 (7th ed.1997); 29 James Wm. Moore et al., Moore's Federal Practice § 707.01[8][b] (3d ed. Mar.1998). But he must prove that his lost income occurred by reason of the injury sustained from the accident. *See, e.g., Griffin v. Oceanic Contractors, Inc.,* 664 F.2d 36, 39 (5th Cir. Unit A 1981) (allowing plaintiff seaman no award for lost wages after his full recovery from injury), *rev'd on other grounds,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). In the present case, plaintiff failed to demonstrate that his injuries caused any reduction in his earnings.

For example, plaintiff testified that he suffers from headaches, blurry vision and night vision problems as a result of the accident. He neglected, however, to furnish any proof showing such medical problems made him unable to work as a deckhand aboard tugboats. *Cf.* 29 Moore et al., *supra,* § 707.01[8][b] ("[The calculation of lost wages] can be made by . . . a simple calculation showing the earning capacity of the individual and the length of time he has been *unable* to perform any work." (emphasis added)). In fact, the only evidence in the record leads to the opposite conclusion, that is, that plaintiff remains capable of working in jobs that pay equal wages.

Jones testified he was ready, willing and able to return to work in his same position with defendant after the accident, and Eric S. Pearlstein, M.D., who treated plaintiff at the time of his injury, approved plaintiff's return because his corneal abrasion was completely healed. Jones did go back to work and remained aboard the CHAPLAIN through July 7, 1993. Although he was fired on July 7, none of the evidence hints that his injuries affected his ability to perform his duties. Nor does plaintiff himself allege his termination resulted from his physical condition. Rather, Jones' July 6 performance evaluation suggests poor attitude as a possible explanation for his termination. In his complaint and appellate brief, plaintiff avers Spentonbush wrongfully terminated him in anticipation of his commencing legal proceedings against it. Jones, however, offers no evidence in support of this claim.

The absence of any evidence to support the jury's finding that plaintiff's injuries caused his lost earnings means that the verdict therefore must have resulted from surmise and conjecture. Although plaintiff returned to Louisiana, it was, quite simply, not because of his injuries. Such action does not justify an award to plaintiff for lost wages. Thus, judgment as a matter of law was appropriately entered.

## II Exclusion of Good Evaluations Proof

Spentonbush introduced proof that plaintiff received a poor performance evaluation prior to his termination. The evaluation, which encompassed the time Jones spent on the tugboat from June 9, 1993 (before the accident) to July 6, 1993, criticized plaintiff for various attitudinal problems. Jones attempted to rebut this evidence by introducing as exhibits prior satisfactory evaluations or, alternatively, by testifying as to the content of those evaluations. The district court excluded this offer of proof.

We review a decision regarding the admissibility of evidence for an abuse of discretion. *See Annis v. County of Westchester,* 136 F.3d 239, 247 (2d Cir.1998); *United States v. Tocco,* 135 F.3d 116, 127 (2d Cir.), *cert. denied sub nom. Ferranti v. United States,* ——— U.S. ———, 118 S.Ct. 1581, 140 L.Ed.2d 795 (1998). A new trial is warranted only if the court's abuse of discretion clearly prejudiced the outcome of the trial. *See Annis,* 136 F.3d at 247.

Plaintiff maintains that proof of his earlier favorable evaluations would have buttressed his claim for lost earnings and made the trial court's decision to exclude such proof prejudicial error. We cannot accept this proposition because we fail to see how this evidence is in any way relevant to Jones' personal injury claims for lost earnings. *See* Fed. R.Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Had the poor evaluation criticized plaintiff's skills, his prior good evaluations would be relevant to show that his skills had deteriorated as a result of injuries

sustained from the accident. However, the poor evaluation focuses exclusively on plaintiff's attitude, including a period of time preceding his injury. As such, evidence of Jones' pre-accident performance record does not shed any light on how the physical injuries he later suffered prevented him from performing work as a deckhand.

■ Nevertheless, it must be noted, the good evaluations would tend to establish Jones' claim for wrongful termination because they could have constituted proof that he may have been fired for reasons apart from job performance. Yet, plaintiff abandoned this claim when he failed to object to the jury charge omitting the issue from the jury's consideration. *See* Fed.R.Civ.P. 51 (requiring a party to object to jury instructions before those instructions may be classified as error). Since evidence offered to prove a matter not at issue is immaterial, *see* Fed.R.Evid. 401, Judge Stein did not abuse his discretion when he excluded proof irrelevant to the issues actually raised at trial. *See* Fed.R.Evid. 402 ("Evidence which is not relevant is not admissible.").

### III Denial of Pre–Judgment Interest

■ Plaintiff asserted claims for negligence under the Jones Act and unseaworthiness under general maritime law. The jury awarded him $10,000 for past pain and suffering, less $2,500 for comparative negligence, without apportioning the amount between the two theories of liability. We have held that a court may award pre-judgment interest on a single award of damages that is not segregated into separate negligence and unseaworthiness components. *See Magee v. United States Lines, Inc.*, 976 F.2d 821, 822–23 (2d Cir.1992) (noting that such interest may be awarded for maritime claims but generally not for Jones Act claims). As a result, plaintiff requested that the district court award him pre-judgment interest on the verdict. That request was denied.

■ To make an injured party whole, prejudgment interest should be awarded in admiralty cases absent exceptional circumstances. *See City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995); *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 310 (2d Cir.1987). Nonetheless, such an award is not automatic. Over 110 years ago in *The Scotland*, 118 U.S. 507, 6 S.Ct. 1174, 30 L.Ed. 153 (1886), the Supreme Court explained that

> [t]he allowance of interest on damages is not an absolute right. Whether it ought or ought not to be allowed depends upon the circumstances of each case, and rests very much in the discretion of the tribunal which has to pass upon the subject, whether it be a court or a jury.

*Id.* at 518–19, 6 S.Ct. 1174; *see also Ingersoll Milling Mach.*, 829 F.2d at 311 ("The rule in this Circuit, however, is that the rate of interest used in awarding *prejudgment* interest rests firmly within the sound discretion of the trial court."). Here, both parties agreed the trial court would determine the amount of pre-judgment interest. For several reasons, we do not believe the court abused this discretion when it found that exceptional circumstances warranted a departure from the general rule.

In the first place, Jones delayed in bringing the action. *See Cement Div.*, 515 U.S. at 196, 115 S.Ct. 2091 ("Although we have never attempted to exhaustively catalogue the circumstances that will justify the denial of interest, and do not do so today, the most obvious example is the plaintiff's responsibility for 'undue delay in prosecuting the lawsuit.'") (quoting *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983)). Jones filed his complaint on June 12, 1996, nearly three years after the accident of June 21, 1993. While plaintiff attributes his delay to his change in counsel in 1996, the district court found this excuse failed to account adequately for plaintiff's tardiness.

Moreover, plaintiff disregarded the court's scheduling order during discovery. The order required him to provide his safety expert's report to defendant by March 31, 1997, to permit defendant "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed.R.Civ.P. 26 advisory committee's note (a)(2) (1993). Ignoring this deadline, plaintiff waited over three months until July 11, 1997 to serve his report

on Spentonbush. Magistrate Judge Michael H. Dolinger described that report as "so plainly inadequate in light of the specific requirements of Fed.R.Civ.P. 26(a)(2) as to amount simply to continued non-compliance." Jones finally submitted a satisfactory supplemental report on July 29, 1997, almost four months after the March 31 deadline had passed. He excused the delay by saying his expert had not rendered a report earlier because the safety goggles that plaintiff had worn—and which his expert needed to examine—had been laying in the trunk of a friend's car. Although the district court ultimately permitted the expert to testify at trial, plaintiff's non-compliance with discovery orders forms an independent circumstance justifying the denial of pre-judgment interest.

### IV Effect of Violation of the OSHA Regulation

■ The OSHA regulations require that a grinding wheel, such as that used by plaintiff, have a safety guard. *See* 29 C.F.R. § 1910.243. Defendant concedes that its wheel had no such guard. By agreement between the parties, the trial court read the applicable OSHA regulation to the jury prior to its deliberations and appended the relevant provisions to the jury charge.

Plaintiff requested the court to charge the jury that defendant's violation of the regulation established negligence *per se* or, at a minimum, shifted the burden to the defendant to prove that a safety guard could not have prevented plaintiff's eye injury. He further urged that an OSHA violation under the law barred a finding of comparative negligence on his part. Over plaintiff's objection, the district court instructed the jury that it could find negligence if it found an OSHA violation, but that a finding of such a violation did not mandate a finding of negligence. It further charged the jury on the rule of comparative negligence. Jones contends the district court erred when it gave these instructions.

■ OSHA regulations apply to working conditions of employees aboard ships not inspected by the Coast Guard. *See Donovan v. Red Star Marine Servs.*, 739 F.2d 774, 780 (2d Cir.1984). Because the CHAPLAIN was a local, uninspected tugboat, it was subject to

OSHA regulations. The issue before us is what effect Spentonbush's failure to provide a grinding wheel in compliance with 29 C.F.R. § 1910.243 should have upon plaintiff's personal injury claims.

As noted, Jones contends an OSHA violation should either constitute negligence *per se* or shift the burden of causation to the defendant. To support this contention, he relies on the Supreme Court's decision in *Kernan v. American Dredging Co.*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). In *Kernan*, a seaman lost his life when his tugboat caught fire as a result of an open-flame kerosene lamp igniting highly inflammable vapors above the surface of the Schuylkill River. *See id.* at 427, 78 S.Ct. 394. Although a Coast Guard regulation required that such lamps be placed at a height of at least eight feet above the water, the trial court found the lamp was located on the deck of a scow not more than three feet above the water. *See id.* The Supreme Court held that this violation of a navigational statute resulted in negligence *per se. See id.* at 438–39.

Alternatively, if we decline to adopt a *per se* approach, Jones suggests that the Supreme Court's decision in *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1873), requires Spentonbush to prove its OSHA violation could not have caused the accident. In *The Pennsylvania*, a sailing ship and a steamboat collided in a dense fog with poor visibility. *See id.*, 86 U.S. (19 Wall.) at 133. Although the steamer travelled at an excessive speed, *see id.*, 86 U.S. (19 Wall.) at 134, and the sailboat rang a warning bell, *see id.*, 86 U.S. (19 Wall.) at 135, the Court criticized the sailboat for violating a maritime statute requiring a foghorn and not a bell as the appropriate signal to be given by sailboats traveling in dense fog. *See id.* The Court held that if a vessel fails to comply with such a statutory duty, it has the burden of proving the breach not only might not, but also could not, have contributed to the casualty. *See id.*, 86 U.S. (19 Wall.) at 136; *see also In re Seaboard Shipping Corp.*, 449 F.2d 132, 136 (2d Cir.1971) (applying *The Pennsylvania* Rule in a case concerning the deaths of two seamen). The Ninth Circuit has held that

this rule applies when a statutory duty to provide proper equipment is implicated. *See Waterman S.S. Corp. v. Gay Cottons,* 414 F.2d 724, 737 (9th Cir.1969) ("Although the Pennsylvania Rule has been applied mainly in 'rules of the road' and 'manning' cases, it is also applicable to failure to provide equipment required by statute.").

In addition to easing his burden of proof, plaintiff believes an OSHA violation also precludes any reduction in a damage award for comparative fault. The Ninth Circuit in *Fuszek v. Royal King Fisheries, Inc.,* 98 F.3d 514 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1334, 137 L.Ed.2d 494 (1997), expressly held that a violation of a Coast Guard regulation bars a finding of comparative negligence on plaintiff's part. *See id.* at 517. Moreover, the *Kernan* Court's decision to afford seamen all the rights granted to railroad workers by the Federal Employers' Liability Act, *see* 355 U.S. at 439, 78 S.Ct. 394, would include a bar against comparative negligence for violations of statutes enacted for the safety of employees. *See* 45 U.S.C. § 53 (1994).

In contrast to the defendants in *Kernan, The Pennsylvania* and *Fuszek,* however, Spentonbush did not violate a Coast Guard regulation or maritime statute. Instead, it violated an OSHA regulation. This distinction in the source of defendant's statutory duty is key to this appeal. Unlike Coast Guard regulations and maritime statutes that are specifically aimed at shipping activities, Jones relies on a general workplace safety regulation to attain the same results in a maritime context. We do not think it was Congress' purpose for the Occupational Safety and Health Act (the Act) to have such an all-encompassing effect. *See Industrial Union Dep't v. American Petroleum Inst.,* 448 U.S. 607, 641, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980) (plurality opinion) ("[The Act] was not designed to require employers to provide absolutely risk-free workplaces."); *Titanium Metals Corp. of America v. Usery,* 579 F.2d 536, 543 (9th Cir.1978) ("[The Act] was never designed, nor could it have been, to eliminate all occupational accidents."); *Usery v. Kennecott Copper Corp.,* 577 F.2d 1113, 1118 (10th Cir.1977) ("[The Act] does not hold the employer responsible for the prevention of all accidents."). Congress pro-

vides the following limitation to the Act's applicability

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or *to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees* under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

29 U.S.C. § 653(b)(4) (1994) (emphasis added).

Imposing negligence *per se,* shifting the burden of proof and barring a finding of comparative negligence for an OSHA violation would all "enlarge or diminish or affect in any other manner" the liability of a maritime employer. *See Ries v. National R.R. Passenger Corp.,* 960 F.2d 1156, 1162 (3d Cir.1992) (holding that a violation of an OSHA regulation neither results in negligence *per se* nor bars a finding of comparative negligence); *Albrecht v. Baltimore & Ohio R.R. Co.,* 808 F.2d 329, 332–33 (4th Cir.1987) (same); *see also Minichello v. U.S. Indus.,* 756 F.2d 26, 29 (6th Cir.1985) (prohibiting use of OSHA regulations to establish product liability because knowledge of the regulation may lead the trier of fact to find liability). *But see Pratico v. Portland Terminal Co.,* 783 F.2d 255, 266–68 (1st Cir. 1985) (holding that violation of an OSHA regulation may be considered negligence *per se* and thereby bar a finding of comparative negligence); *Elliott v. S.D. Warren Co.,* 134 F.3d 1, 4–5 (1st Cir.1998) (limiting *Pratico*).

Allowing an OSHA violation to constitute negligence *per se* clearly affects the employer's liability by transforming the character of the factfinder's inquiry into the applicable standard of care. In the absence of a *per se* rule, OSHA is simply evidence of the standard of care, the violation of which may be accepted or rejected as proof of negligence by the trier of fact according to the sum total of all the evidence. *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 36, at 230 (5th ed.1984). Were we to adopt a *per se* rule, an OSHA violation would conclusively establish that the employer breach-

ed the standard of care and therefore acted negligently, even when the violation might not necessarily be unreasonable. *See Martin v. Herzog,* 228 N.Y. 164, 126 N.E. 814, 815 (1920) (Cardozo, J.) (explaining that "[j]urors have no dispensing power, by which they may relax" a statutory duty); Keeton, *supra,* at 230 ("The effect of [a *per se*] rule is to stamp the defendant's conduct as negligence, with all of the effects of common law negligence....").

Similarly, shifting the burden of proof to require the employer to prove that its statutory violation could not have caused the accident will often fix the employer's liability when the factfinder is in doubt on the causation element. Moreover, the standard of proof required of the employer itself is heightened because the employer must show not merely that its violation *probably* did not cause the accident—as would be required by common law—but that it *could* not have done so. *See The Pennsylvania,* 86 U.S. (19 Wall.) at 136; *Puget Sound Navigation Co. v. Nelson,* 59 F.2d 697, 699–700 (9th Cir. 1932); *see also Waterman S.S. Corp.,* 414 F.2d at 736 ("This burden [under *The Pennsylvania* Rule] is frequently extremely difficult, if not impossible, for the violator to discharge, in the nature of things; and therein lies the true penalty imposed upon him."). Because both the standard of care and causation are critical factors in determining liability, issuing a negligence *per se* instruction or shifting the burden of proof clearly would affect an employer's liability.

Finally, the plain effect of a bar to comparative negligence would be to "'affect,' if not 'enlarge,' the employer's liability." *Ries,* 960 F.2d at 1162. Whether an action is brought for Jones Act negligence or for unseaworthiness, the rule of comparative negligence applies. *See Jacob v. City of New York,* 315 U.S. 752, 755, 62 S.Ct. 854, 86 L.Ed. 1166 (1942); *Socony–Vacuum Oil Co. v. Smith,* 305 U.S. 424, 431, 59 S.Ct. 262, 83 L.Ed. 265 (1939). In the present case, were we to ignore this general rule and bar a finding of comparative negligence, Spentonbush's liability would expand from a $7,500 verdict to a $10,000 verdict.

In sum, a violation of an OSHA regulation is properly admissible at trial as evi-

dence of negligence. *See* Restatement (Second) of Torts § 288B(2) (1965). And, such violation may even serve as a basis for imposing administrative penalties as well. But it was not Congress' aim to have it constitute negligence *per se,* shift any burden of proof or bar a finding of comparative negligence. Consequently, the instructions given to the jury on the effect of an OSHA violation were not in error.

### CONCLUSION

For the foregoing reasons, the judgment appealed from is affirmed.