NORTH AMERICAN FOREIGN TRADING CORP., Plaintiff–Appellee–Cross–Appellant,

v.

MITSUI SUMITOMO INSURANCE USA, INC., formerly known as Mitsui Marine and Fire Insurance Company of America, and MSI Claims, Inc., Defendants–Appellants–Cross–Appellees.

Nos. 07–2442–cv(L), 07–2502–cv(xap), 07–2505–cv(xap).

United States Court of Appeals, Second Circuit.

July 24, 2008.

Joseph F. Donley, Rodney M. Zerbe, Daniel A. Lebersfeld, Dechert LLP, New York, NY; John F. Ryan, McDermott & Radzik, LLP, New York, NY, for Plaintiff–Appellee–Cross–Appellant.

John J. Sullivan, Raymond P. Hayden, Caspar F. Ewig, Hill Rivkins & Hayden LLP, New York, NY, for Defendants–Appellants–Cross–Appellees.

PRESENT: Hon. GUIDO CALABRESI, Hon. CHESTER J. STRAUB, Hon. B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

Defendants–Appellants–Cross–Appellees Mitsui Sumitomo Insurance USA, Inc. and MSI Claims, Inc. (collectively "Mitsui") were found liable following a bench trial for losses of goods from two Chinese warehouses, Cidmate and Lionda, sustained by Plaintiff–Appellee–Cross–Appellant North American Foreign Trading Corp. ("NAFT"). The District Court (Shira A. Scheindlin, *Judge*) awarded NAFT $1,125,000 in damages for the Cidmate losses and $6,300,000 in damages for the Lionda losses. *N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, 499 F.Supp.2d 361 (S.D.N.Y.2007). The District Court subsequently ruled that NAFT was not entitled to prejudgment interest on either claim. *N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, Nos. 05 Civ. 4807, 05 Civ. 5827, 2007 WL 2873926 (S.D.N.Y. May 15, 2007).

Mitsui timely appealed, challenging the District Court's judgment only with respect to the Lionda claim. Mitsui raises three main issues on appeal, arguing (A) that the District Court improperly exercised its admiralty jurisdiction over this case; (B) that the District Court abused its discretion in estopping Mitsui from asserting a limitations defense with respect to the Lionda claim; and (C) that the District Court abused its discretion in estopping Mitsui from contesting the location and amount of the missing goods in the Lionda matter. NAFT timely cross-appealed, arguing that the District Court abused its discretion in denying prejudgment interest on both the Cidmate and Lionda claims. We assume the parties' familiarity with the facts, procedural histo-

ry, and scope of the issues presented on appeal. For the reasons that follow, we affirm the District Court's judgment on the Lionda claim, reverse its denial of prejudgment interest on both claims, and remand for further proceedings.

## A. Jurisdiction

■ On *de novo* review, we find that the District Court properly exercised its admiralty jurisdiction under 28 U.S.C. § 1333(1). "[I]n examining whether admiralty jurisdiction encompasses a claim, a federal court must initially determine whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 200 (2d Cir.1992) (internal quotation marks omitted). This threshold inquiry, if still required after *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004), *see Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 313–14 (2d Cir.2005) (questioning its vitality), is satisfied in this case. NAFT's goods were shipped to the United States by ocean transit, returned to China by ocean transit, and were to be transported back to the United States by ocean transit had they not disappeared mysteriously from Chinese warehouses. *Cf. In re Balfour MacLaine Int'l Ltd.*, 85 F.3d 68, 74–75 (2d Cir.1996); *Atl. Mut. Ins. Co.*, 968 F.2d at 200. Moreover, we find that admiralty jurisdiction was proper because "the primary or principal objective of the [insurance] contract is the establishment of policies of marine insurance." *Folksamerica*, 413 F.3d at 315 (internal quotation marks omitted); *see also Norfolk Southern*, 543 U.S. at 23–24, 125 S.Ct. 385 ("[W]hether a contract is a maritime one ... 'depends upon ... the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" (quoting *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 63 L.Ed. 510 (1919))).

## B. Estoppel from Asserting Limitations Period

■ A district court's rulings as to equitable estoppel of a limitations defense are reviewed for abuse of discretion. *See Zerilli–Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 81 (2d Cir.2003). A district court abuses its discretion when, *inter alia*, its decision rests on an error of law or a clearly erroneous factual finding. *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir.2001). The insured may establish estoppel under New York law by proving that the insurer, "by its conduct, ... lulled [the insured] into sleeping on its rights under the insurance contract." *Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966, 968, 525 N.Y.S.2d 793, 520 N.E.2d 512, 514 (N.Y.1988); *see also Cardinale v. Genesee Valley Med. Care*, 94 A.D.2d 966, 967, 463 N.Y.S.2d 972, 973 (4th Dep't 1983) (insurer may be estopped from asserting limitation period where its agent met with insured and advised that her claim would be submitted to reinstatement committee with recommendation that it be approved); *Plon Realty Corp. v. Travelers Ins. Co.*, 533 F.Supp.2d 391, 395 (S.D.N.Y. 2008) ("Only if a carrier engages in a course of conduct which lulls the policy holder into inactivity in the belief that its claim will be paid, or where the insured is induced by fraud or misrepresentation to refrain from commencing a timely action, will the carrier be estopped from asserting the statute of limitations defense."). In addition, as the District Court noted, the parties owed each other at the least "the duty of good faith and fair dealing." *N.*

*Am. Foreign Trading Corp.*, 499 F.Supp.2d at 377.

The District Court did not exceed its allowable discretion in estopping Mitsui from asserting its limitations defense. The record shows that (1) as of April 29, 2005, Mitsui effectively completed its investigation into the facts of the Lionda claim, confirming NAFT's loss; (2) by May 2, 2005, Mitsui formulated its coverage position on the scope of the Warehouse Endorsement, interpreting the policy as providing only named perils coverage for the missing goods, and Mitsui expected that this interpretation would apply equally to the Cidmate and Lionda claims, providing a basis for denying both claims because mysterious disappearance was not a named peril; (3) on May 2, 2005, Mitsui communicated this coverage position to NAFT in its letter declining coverage on the Cidmate claim and yet Mitsui failed to issue a declination letter on the Lionda matter; (4) without any justification, Mitsui took from April 29 until May 25 to change its "draft" investigative report into an identical version marked "final," having told NAFT that it was awaiting the report before making its coverage decision; and (5) despite the foregoing, Mitsui waited until June 16, 2005—four days after the date when, according to Mitsui's files, NAFT's one-year limitations period expired—to issue its declination letter on the Lionda claim, which was substantially identical to the Cidmate declination letter it had sent forty-five days earlier.

Under these circumstances, the District Court found that Mitsui had lulled NAFT into thinking that its Lionda claim would be treated differently than its Cidmate claim and "lulled NAFT into forbearing from bringing suit until after what Mitsui thought to be the expiration of the one-year limitations period." *N. Am. Foreign Trading Corp.*, 499 F.Supp.2d at 381. The

District Court also found that Mitsui's conduct constituted a breach of its duty of good faith and fair dealing. *See id.*

Mitsui does not challenge these factual findings so much as their significance, arguing that estoppel cannot be based on the failure to issue a timely denial letter and cannot be found in the absence of evidence of NAFT's reliance. Mitsui, however, misconstrues the basis of the District Court's estoppel decision. It was not merely that Mitsui's investigation took a long time and its declination letter came after the limitations period expired. Rather, the District Court found that Mitsui should have informed NAFT of its position on the Lionda claim when it issued its Cidmate declination letter and that NAFT relied upon Mitsui's failure to do so. In addition, the District Court found that Mitsui acted in bad faith by failing to inform NAFT of its position on the Lionda claim in early May. NAFT properly believed that it would have been informed. We cannot say that clearly erroneous factual findings or any error of law infected either one of these alternative bases for the District Court's estoppel decision.

## C. Estoppel from Contesting the Location and Amount of the Loss

█ Nor do we see any reversible error in the District Court's ruling that Mitsui was estopped from challenging the location of NAFT's goods at the time of loss, and the amount of the loss from the new Lionda warehouse. The District Court based this estoppel decision on its determination that Mitsui did not raise this issue in its handling of NAFT's claim nor in the instant litigation until the eve of trial, to NAFT's detriment. *N. Am. Foreign Trading Corp.*, 499 F.Supp.2d at 378–79.

Mitsui argues that this was an abuse of discretion because (1) Mitsui questioned whether NAFT's goods were lost from the

covered Lionda warehouse or another warehouse long before the bench trial; (2) NAFT has not established prejudice; and (3) estoppel cannot create coverage.

Upon review of the record, we agree with the District Court that Mitsui had not disputed the location of the goods or the amount of loss prior to the joint pretrial order submitted one week before trial. (It is not even clear that Mitsui's contention in the pretrial order attempted to raise anything other than the limitations defense it had previously asserted.) Secondly, the District Court properly determined that NAFT would be prejudiced by having to litigate these issues "without the benefit of having addressed [them] in discovery." *Id.* at 379. Finally, the issue in this case is not whether estoppel creates coverage, but whether Mitsui is estopped from contesting the *amount* of coverage. Mitsui concedes that NAFT lost at least some goods from the covered warehouse, and so coverage undeniably existed. The only question, then, is the extent of NAFT's loss from the covered Lionda warehouse. The District Court did not exceed its allowable discretion in estopping Mitsui from contesting this issue at the eleventh hour.

### D. Prejudgment Interest

■ We review the District Court's denial of prejudgment interest for an abuse of discretion. *Jones v. Spentonbush–Red Star Co.,* 155 F.3d 587, 593 (2d Cir.1998). In admiralty cases, prejudgment interest should be awarded "absent exceptional circumstances. Nonetheless, such an award is not automatic." *Id.* (citations omitted). A plaintiff's undue delay in prosecuting the lawsuit may justify a denial of interest. *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.,* 515 U.S. 189, 196, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995). The District Court found that NAFT had unduly delayed in bringing these lawsuits and so

denied prejudgment interest on both claims. *N. Am. Foreign Trading Corp.,* 2007 WL 2873926, at *1.

The District Court exceeded its allowable discretion in so ruling. With respect to the Cidmate claim, the District Court found that NAFT knew or should have known of the Cidmate loss on April 21, 2004, the parties entered into a standstill agreement in April 2005 extending the limitations period, Mitsui's declination letter was sent to NAFT's insurance broker on May 2, 2005, and NAFT filed suit on May 18, 2005. *N. Am. Foreign Trading Corp.,* 499 F.Supp.2d at 368–69. With respect to the Lionda claim, the District Court found that NAFT knew or should have known of the Lionda loss on May 17, 2004, Mitsui's declination letter was dated June 16, 2005, and NAFT filed suit on June 23, 2005 after having been "lulled," as discussed above. *Id.* at 371–72. This record does not support a finding of undue delay. *Cf. Jones,* 155 F.3d at 593 (affirming denial of prejudgment interest due to plaintiff's undue delay of nearly three years from the date of his accident to the filing of his lawsuit). We therefore reverse the District Court's denial of prejudgment interest on both claims.

Accordingly, we AFFIRM the judgment as to damages on the Lionda claim, and REVERSE and REMAND as to prejudgment interest on both the Cidmate and the Lionda claims.